## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BRUNO K. MPOY,

        *Plaintiff,*

    v.

DISTRICT OF COLUMBIA, *et al.*,

        *Defendants.*

22-cv-02501 (BAH)

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND THE DISTRICT'S PARTIAL MOTION FOR SUMMARY JUDGMENT

Defendants District of Columbia (the District), John Burst (Burst), and Donielle Powe (Powe) move for dismissal, under Fed. R. Civ. P. 12(b)(6), of Plaintiff Bruno K. Mpoy's (Mpoy) Complaint. The District also moves for partial summary judgment under Fed. R. Civ. P. 56. Judgment in favor of these defendants is appropriate because: *First,* Mpoy fails to state a valid Fifth Amendment municipal liability claim under 42 U.S.C. § 1983; the suit against Burst and Powe in their official-capacity is a suit against the District; and both Burst and Powe are entitled to qualified immunity. *Second,* neither Burst nor Powe can be sued under Title VII. And Mpoy's failure to exhaust his administrative remedies bars his Title VII action. Moreover, he failed to state a viable Title VII claim against the District even if the claim was not time-barred. *Third*, Mpoy has not pleaded sufficient facts to proceed against these defendants under the D.C. Whistleblower Protection Act, the D.C. Human Rights Act, D.C Code § 2-1401.01, *et seq.*, or at common law. *Finally,* Mpoy's common law claims against the District are also barred under the Comprehension Merit Personnel Act and D.C. Code § 12-309.

A memorandum of points and authorities is attached for this Court's consideration.  A proposed Order is also attached.

Dated: November 4, 2022                    Respectfully submitted,

                                           KARL A. RACINE
                                           Attorney General for the District of Columbia

                                           CHAD COPELAND
                                           Deputy Attorney General
                                           Civil Litigation Division

                                           */s/ Patricia A. Oxendine*
                                           PATRICIA A. OXENDINE
                                           D.C. Bar No. 428132
                                           Chief, Civil Litigation Division, Section I

                                           */s/ Nicole Marimon*
                                           NICOLE MARIMON
                                           D.C. Bar No. 90001966
                                           Assistant Attorney General
                                           Office of the Attorney General
                                           Civil Litigation Division, Section I
                                           400 6th Street, NW
                                           Washington, D.C. 20001
                                           Phone: (202) 705-1213 (direct)
                                           Email: nicole.marimon@dc.gov

                                           *Counsel for Defendants District of Columbia, John Burst and Donielle Powe*

2

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| |
|---|
| BRUNO K. MPOY, |
| *Plaintiff,* |
| v. |
| DISTRICT OF COLUMBIA, *et al.*, |
| *Defendants.* |

22-cv-02501 (BAH)

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND THE DISTRICT'S PARTIAL MOTION FOR SUMMARY JUDGMENT

Defendants District of Columbia (the District), John Burst (Burst) and Donielle Powe (Powe) submit this memorandum of points and authorities in support of their dispositive motion.

### INTRODUCTION

Plaintiff Bruno K. Mpoy's (Mpoy) suit against the defendants cannot be maintained under any theory of liability.

### FACTS

Mpoy asserts he is a special education teacher with the District of Columbia Public Schools (DCPS). Compl. ¶ 1. According to Mpoy, during the 2020-2021 academic year, he was repeatedly asked to violate special education law, including falsely altering student academic performance records. *Id.* ¶ 18. Mpoy further submits that during the same period, he observed and disclosed many violations of special education law, including the failure to provide required accommodations to students. *Id.* ¶ 19, 28. Mpoy alleges that on August 26, 2021, he filed a grievance through the Washington Teachers' Union with the District of Columbia Human Resources Office outlining the above circumstances. *Id.* ¶ 8. He alleges that on August 27,

2021, the District issued him a letter of suspension without:  1) any legitimate reason, and 2) adhering to the disciplinary procedures that govern DCPS personnel and disciplinary actions. And that DCPS did not provide proper notice or an opportunity to contest the suspension.  *Id.* ¶ 7.  Mpoy claims that the suspension letter offers conclusive evidence that DCPS discriminated against him and treated him different from his peers.  *Id.* ¶ 32.

On September 10, 2021, Mpoy sent a letter to the Office of Risk Management.  *See* Lana Craven Decl., Ex. 1, attaching Mpoy Letter, as Ex. A.  In that letter, Mpoy asserts his intent to sue the District for violating his constitutional rights.  *See* Ex. A.

On August 22, 2022, Mpoy sued the District, Burst, and Powe asserting six claims: Claim 1:  Violation of the Fifth Amendment of the Constitution of The United States; Claim 2: Violation of The District of Columbia Whistleblower Protection Act (WPA); Claim 3:  Violation of DC Code § 2–1401.01 and § 2 1402.11; Claim 4:  Violation of Title VII of the Civil Rights Act of 1964; Claim 5:  Intentional Causation of Mental Anguish and Physical Pain and Suffering; and Claim 6:  Intentional and Willful Negligence alleging violations of his Fifth Amendment due process rights under 42 U.S.C. § 1983.  The defendants now move to dismiss Mpoy's complaint.

## LEGAL STANDARD

### I.    Motion to Dismiss Standard

A dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is proper if the Complaint fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). The determination of whether a dismissal is proper is made on the face of the pleadings alone. *See Telecomms. of Key West, Inc. v. United States*, 757 F.2d 1330, 1335 (D.C. Cir. 1985).  A plaintiff is required to plead "enough facts to state a claim to relief that is plausible on its face."

*Bell Atlantic Corp. v. Twombly*, 559 U.S. 544, 570 (2007).  A complaint, therefore, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" in order to survive a Rule 12(b)(6) motion to dismiss.  *Id.* at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Id.* (citing 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216 (3d ed. 2004)).  Courts, thus, "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986)).

## II.    <u>Motion for Summary Judgment Standard</u>

Summary judgment is appropriate upon a showing that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A factual dispute is material if it could alter the outcome of the suit under the substantive governing law."  *Slack v. Washington Metropolitan Area Transit Auth.*, 353 F. Supp. 3d 1, 6 (D.D.C. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant."  *Diaz v. Washington Metropolitan Area Transit Auth.*, 243 F. Supp. 3d 86, 88 (D.D.C. 2017) (quoting *Anderson*, 477 U.S. at 248).

Conclusory allegations with no basis in the record will not allow the non-movant to escape summary judgment.  *Id.* (citing *Ass'n of Flight Attendants-CWA, AFL-CIO v. United States Dep't of Transp.*, 564 F.3d 462, 465 (D.C. Cir. 2009)).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.* (quoting *Anderson*, 477 U.S. at 249-50).  "[A] complete failure of proof concerning an essential element

of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).

## ARGUMENT

I. **Mpoy's Fifth Amendment Due Process Claims Against These Defendants Fail.**

A. **Mpoy's Municipal Liability Claims Under the Fifth Amendment (Claim 1 and 6) Against the District Are Not Actionable.**

Mpoy asserts two Fifth Amendment claims against the District (Claims 1 and 6). *See* Compl. at ¶¶ 22-26, 43-47. According to Mpoy, the District violated his rights, "by and through Defendants Burst and Powe," when he was notified of his suspension on the August 27, 2021 without adhering to established disciplinary procedures, and that he was retaliated against because he would not participate in violations of special education law as requested. *Id.* ¶¶ 7-8, 24, 26. The Fifth Amendment Due Process Clause protects individuals from deprivations of 'life, liberty, or property, without due process of law.'" *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 689, 386 U.S. App. D.C. 144 (D.C. Cir. 2009) (citing U.S. Const. amend. V). A procedural due process violation—the type alleged here—"occurs when an official deprives an individual of a liberty or property interest without providing appropriate procedural protections." *Id.* But municipal liability under § 1983 is severely limited. A plaintiff must identify a municipal policy, custom, or practice that caused the plaintiff's constitutional injury. *See Board of the County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 403 (1997); *see also Bush v. District of Columbia*, 595 F.3d 384, 386 (D.C. Cir. 2010). As explained in *Monell*, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom … inflicts the injury that the government as an entity is responsible under § 1983." *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

4

Here, Mpoy's Complaint is devoid of any factual allegations showing that a "custom, policy, or practice" caused the violation of his procedural due process rights. *See* Compl. Rather, Mpoy simply sets forth conclusory allegations that the District violated his rights, "by and through Defendants Burst and Powe," when he was notified of his suspension on August 27, 2021 without adhering to established disciplinary procedures. *Id.* ¶¶ 7-8, 24, 26. But because liability cannot be imputed against the District because of asserted unconstitutional conduct by Burst and Powe, Mpoy's claims fail. *See Monell,* 436 U.S. at 691 (there is no *respondeat superior* liability under § 1983). Because there are no facts from which the Court could even reasonably infer that Mpoy suffered constitutional harm as a result of a District policy, practice, or custom, Mpoy's claim against the District fails.

### B.    Mpoy's Official-Capacity Suits Against Burst and Powe Should Be Dismissed.

Mpoy's lawsuit against Burst, as principal of one of its schools, and Powe, as deputy chief for the labor and management division of the DCPS Office of Human Resource, in their official capacities cannot be maintained. Instead, Mpoy must look to the District who is already a party defendant for any relief he seeks. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Thus, this suit against Burst and Powe in their official capacities should be dismissed.

### C.    Burst and Powe Are Entitled to Qualified Immunity.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate a clearly established statutory or constitutional right of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly, and the need to shield officials from harassment, distraction, and liability when

they perform their duties reasonably.  *Pearson*, 555 U.S. at 231.  "The protection of qualified immunity applies regardless of whether the government official's error is a 'mistake of law, mistake of fact, or a mistake based on mixed questions of law and fact.'"  *Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting) (quoting *Butz v. Economou*, 438 U.S. 478, 507 (1978) (qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law")).  Qualified immunity is "an immunity from suit rather than a mere defense to liability; and … is effectively lost if a case is erroneously permitted to go to trial."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  Courts have "repeatedly… stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

The trial court has the discretion to determine which prong of the qualified immunity analysis to decide first.  *Ashcroft v. al-Kidd*, 563 U.S. 731, 734, 131 S. Ct. 2074, 2078, 179 L. Ed. 2d 1149 (2011).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier v. Katz*, 533 U.S. 194, 202 (2001); *see also Johnson v. District of Columbia*, 381 U.S. App. D.C. 351, 528 F.3d 969, 976 (D.C. Cir. 2008) (noting that although reasonableness might be a factor in both steps, the second step focuses solely on whether it was reasonable for the government official to not know their conduct was unlawful). In *Tahlequah v. Bond*, 595 U.S. __ (2021) (per curiam), the Supreme Court reversed a denial of qualified immunity and clarified what constitutes "clearly established" for purposes of the doctrine. The court states, "[w]e have repeatedly told courts not to define clearly established law at too high a level of generality. . . . It is not enough that a rule be suggested by then-existing precedent; the rule's contours must be so well defined that it is clear to a reasonable officer that

his conduct was unlawful in the situation he confronted." *Tahlequah*, slip op. at 3. (citations and quotations omitted).   Similarly, in *Rivas-Villegas v. Cortesluna*, 595 U.S. __ (2021) (per curiam), the Supreme Court reversed another denial of qualified immunity, again cautioning courts against defining a clearly established right at too high level of generality. The court stated, "to show a violation of clearly established law, Cortesluna must identify a case that put Rivas-Villegas on notice that his specific conduct was unlawful." *Rivas-Villegas*, slip op. at 5.

Under the law, in order "[t]o defeat a defense of qualified immunity, a plaintiff must show not only [1] that an official 'violated a constitutional right,' but [2] also that 'the right was clearly established' at the time of the violation." *Fenwick v. Pudimott*, 778 F.3d 133, 137 (D.C. Cir. 2015) (quoting *Saucier*, 533 U.S. at 200-01).   Here, according to Mpoy, he observed a litany of "violations of special education law and disclosed them to his supervisor John Burst."  Compl. ¶ 19.  And that both Burst and Powe violated his rights by issuing him a suspension notice without cause.  *Id.* ¶ 20.  These allegations are not only conclusory, they are not enough to hold these defendants liable for violating Mpoy's constitutional rights.  Notably, Mpoy does not allege that Burst or Powe were aware of the formal grievance he filed on August 26, 2021 or that the two were tied together.  *See* Compl.  As such, based on the record available, to the extent these defendants made any personnel decisions about Mpoy, they are entitled to qualified immunity for taking what they believed to be appropriate personnel actions.  Indeed, Mpoy has not shown that his rights as asserted were clearly established law.  *See* Compl.  *See also White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quotations and citation omitted) (Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law.").  Mpoy has not shown that either Burst or Powe are plainly incompetent or that they knowingly violated the law.

## II.    **Mpoy May Not Proceed Under Title VII Against These Defendants.**

### A.    **Mpoy's Title VII Claim (Claim 4) Is Not Actionable Against Burst or Powe.**

Mpoy seeks to hold Burst and Powe liable under Title VII of the Civil Rights Act of 1964 for discrimination and retaliation based on his asserted national origin and family history.  *See* Compl. ¶¶ 35-38.  But Mpoy cannot maintain this Title VII action against these defendants because individual liability is not provided for and/or contemplated by Title VII.  See *Fantini v. Salem State Coll.*, 557 F.3d 22, 28 (1st Cir. 2009) (no individual liability under Title VII); *Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir. 1995) (employer liable under Title VII, not a supervisory employee); *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir. 1991) ("Individual capacity suits under Title VII are … inappropriate.  The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act.").  Accordingly, Mpoy's Title VII claims against these defendants should be dismissed.

### B.    **Mpoy Failed to Exhaust His Administrative Remedies As Required.**

A plaintiff seeking to recover damages under Title VII must first exhaust his administrative remedies by filing a charge of discrimination with the Equal Employment Opportunities Commission (EEOC) or the D.C. Office of Human Rights (OHR) for each discrete act of unlawful discrimination or retaliation.  *Amtrak v. Morgan*, 536 U.S. 101, 110 (2002); *Lewis v. City of Chicago*, 560 U.S. 205, 210 (2010).  *See also* 42 U.S.C. § 2000e-2(a)(1); § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1).  And the receipt of a right to sue notice is a condition precedent to the initiation of a Title VII civil action.  *See* 42 U.S.C. § 2000e-5(f)(1).  "[I]n order to be timely, a claim under Title VII ... must be filed within 90 days of the claimant's receipt of a right-to-sue letter."  *Perry v. Gallaudet Univ.*, 738 A.2d 1222, 1225 (D.C. 1999).

Here, Mpoy asserts that he submitted a grievance with the Washington Teachers' Union (WTU) and OHR on August 26, 2021.  *Id.* ¶¶ 8, 21.  But as he admits, he did not receive notice of his suspension until August 27, 2021.  *Id.*  The failure to timely submit an EEOC charge causes the claim to be time-barred and cannot later be entertained by a federal district court.  *See Duberry v. Inter Con Sec. Sys., Inc.*, 898 F. Supp. 2d 294, 298 (D.D.C. 2012).  Because Mpoy filed his grievances before he received his suspension notice or was otherwise suspended, he cannot proceed under Title VII as he failed to exhaust his administrative remedies.  Nor has he shown he received a right to sue notice before filing this action.  Thus, Mpoy cannot proceed under Title VII against the District.

### C.  Mpoy Failed to Plead an Actionable Title VII Claim Based on Discrimination.

Mpoy alleges he was discriminated against because of his national origin and family history.  *See* Compl. ¶¶ 32, 36.  Under Title VII, to establish a *prima facie* case of discrimination, the plaintiff must show that "(1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the circumstances give rise to an inference of discrimination." *Kumar v. D.C. Water & Sewer Auth.*, 25 A.3d 9, 17 (D.C. 2011) (citing *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002).  *See also Dobbs v. Roche*, 329 F. Supp. 2d 33, 41 (D.D.C. 2004). "[I]f a plaintiff fails to establish a *prima facie* case, the inquiry stops."  *McFarland v. George Washington Univ.*, 935 A.2d 337, 347 (D.C. 2007).  A plaintiff "must demonstrate that [their membership in the protected class] was a 'motivating factor' for the [prohibited personnel action]."  *DeJesus v. WP Co. LLC*, 841 F.3d 527, 532 (D.C. Cir. 2016).

Here, Mpoy does not identify either his national origin or family history.  *See Compl.* And in describing the asserted discrimination, he alleges:  (1) that the August 26, 2021 letter of suspension offers "irrefutable evidence that DCPS discriminated against [him] based on his

9

status as a victim of intrafamily offense" and (2) that the suspension letter "clearly established that [he] was treated disparately from his peers based on national origin."  Compl. ¶¶ 32, 36. Other than these conclusory allegations, he has not pleaded facts showing that his national origin or family history (whatever that may entail), either directly or indirectly, caused him to be discriminated against in violation of Title VII.  *Id.* ¶¶ 35-38.  Nor does he identify any co-employee who was treated differently.  *Id.*  Indeed, and other than identify the August 27, 2021 letter, Mpoy fails to plead specific facts showing what discriminatory acts or statements were made, by whom they were made or when they were made.  *See* Compl.  Mpoy's naked assertions are not enough to support this Title VII action. devoid of further factual support.  *Id*.  For this reason, Mpoy's Title VII claim fails.

### D.    Mpoy Failed to Plead an Actionable Title VII Retaliation Claim.

For retaliation claims under Title VII, the *prima facie* requirements are: (1) plaintiff engaged in a statutorily protected activity; (2) that the employer took an adverse personnel action; and (3) that a causal connection existed between the two.  *See Holcomb v. Powell*, 433 F.3d 889, 901 (D.C. Cir. 2006); *see also Hamilton v. Howard University*, 960 A. 2d 308 (D.C. 2008).  Here, Mpoy alleges he engaged in statutorily protected activity when he filed his grievance with WTU and OHR on August 26, 2021.  Compl. ¶¶ 8, 21.  And that he received a notice on August 27, 2021 that he was suspended.  *Id.* ¶ 8.  Here, absent from the Complaint are allegations that any decisionmaker knew that Mpoy engaged in protected activity.  *See* Compl. Rather, he submits he submitted the grievance to the WTU and OHR.  *Id.* ¶ 8.  Because Mpoy did not plead facts showing that the decisionmakers knew about his protected activity, he has failed to show a causal connection between the two.  Thus, Mpoy's retaliation case would be subject to dismissal even had he exhausted his administrative remedies–which he did not.

**III.**    **Mpoy's Claims Under the D.C. Human Rights Act Fails.**

Like Title VII, The DCHRA similarly prohibits employers from discriminating against any individual on the basis of that individual's national origin or other protected class.  *See* D.C. Code § 2-1402.11(a).  District of Columbia courts follow federal courts' constructions of Title VII in interpreting the DCHRA.  *See Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 361 n.17 (D.C.1993).  Here, as described above, Mpoy has not identified his national origin or family history but merely asserts he is a membership of a protected class.  *See* Compl.  That is not enough to show that the actions allegedly taken by Burst or Powe or any other District employees was causally related to either his national original or family history.  Thus, because Mpoy's claim under Title VII fails based on the asserted claims, so too does his claim under the DCHRA (Claim 3).

**IV.**    **Mpoy's Common Law Claims Against the District Defendants are Barred by the Comprehension Merit Personnel Act.**

Mpoy's common law claims are barred by the Comprehensive Merit Personnel Act (CMPA).  The CMPA defines a grievance, in relevant part, as any matter under the control of the District government which impairs or adversely affects the interest, concern, or welfare of employees...."  *Holman v. Williams*, 436 F. Supp. 2d 68, 74 (D.D.C. 2006).  "With few exceptions, the CMPA is the exclusive remedy for a District of Columbia public employee who has a work-related complaint of any kind."  *Robinson v. Dist. of Columbia*, 748 A.2d 409, 411 (D.C. 2000).  The Court of Appeals for the District of Columbia has consistently determined that suits brought by employees based on work-related causes of action are "limited to the administrative and judicial remedies provided by the CMPA."  *Coleman v. Dist. Of Columbia*, 80 A.3d 1028, 1032 (D.C. 2013) (citations and internal quotations omitted).  Moreover, the Court of Appeals has expressed concern that permitting parties to "seek relief outside of the CMPA ...

would frustrate the [CMPA]'s aim to achieve order and efficiency." *Id.* at 1033.  *See also Payne v. District of Columbia*, 808 F. Supp. 2d 164 (D.D.C. 2011). (An employee should not complain about a lack of due process when he failed to avail himself of the procedural measures that were available.)

Here, because all of Mpoy's common law claims concern work-related grievances, they are governed by the CMPA.  *See* Compl. ¶¶ 7-9; 18-21.  Indeed, Mpoy acknowledged that his alleged suspension without pay was in violation of D.C. Code § 1-615.51, *et seq.*–in other words the CMPA. *Id.*  ¶¶ 9, 20.  Thus, Mpoy cannot pursue any of his common law claims against the District defendants because the CMPA provides him with his exclusive remedy.

**V.**    **The Court Should Dismiss Mpoy's Whistleblower Protection Act Claim.**

Mpoy fails to state a claim against the defendants under the D.C. Whistleblower Protection Act (WPA) for which he is entitled to relief.  To plausibly allege a claim under the WPA, Mpoy must allege "(1) a protected disclosure, as defined in § 1-615.52(a)(6); (2) a prohibited personnel action, as defined by § 1-615.52(a)(5); and (3) that the protected disclosure was a 'contributing factor' or causally connected to the prohibited personnel action, as defined in § 1-615.52(a)(2)." *Hawkins v. Boone*, 786 F. Supp. 2d 328, 333 (D.D.C. 2011) (citing D.C. Code § 1-615.53).  Mpoy's claims cannot withstand dismissal.

Mpoy alleges: (1) that he "documented repeated refusals to violate special education law," and (2) that he "observed violations of special education law and disclosed them to this supervisor John Burst."  Compl.¶¶ 19, 28.  Mpoy does not assert he made protected disclosures to Powe.  *See* Compl.  And Mpoy does not offer any facts indicating that Burst took part in or directed the alleged prohibited personnel action (suspension without pay), or that his protected activity played any role in the suspension.  *See* Compl. ¶ 28. Because Mpoy fails to allege any

facts that show that his suspension was tied to his protected activity, his claims fail under the WPA.

## VI.    Mpoy's Intentional Causation of Mental Anguish (Claim 5) and Intentional and Willful Negligence (Claim 6) Claims Against the District are Barred by D.C. Code § 12-309.

As alleged in the Complaint, Mpoy seeks damages exceeding $75,000 from the District under various theories of negligence that he claims arose on August 27, 2021.  *See* Compl. at ¶¶ 8, 39-47.  As a result, D.C. Code § 12-309 applies to his claims against the District.  Under § 12-309, "an action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage." *See* D.C. Code § 12-309(a).  Section 12-309 is in "derogation of the common law principle of sovereign immunity," and must be narrowly construed against claimants seeking to hold the District liable for unliquidated tort damages.  *See District of Columbia v. Dunmore*, 662 A.2d 1356, 1359 (D.C. 1995).

Under § 12-309, Mpoy was required to provide the District with notice of his claims within six months of his injury, i.e. by February 27, 2022, since he asserts he was suspended on August 27, 2021.  *See* Compl. at ¶¶ 8, 32, 36.  *See also Barnhardt v. Dist. of Columbia*, 8 A.3d 1206, 1212 (D.C. 2010) (determining that "[o]nce the plaintiff actually knows, or with the exercise of reasonable diligence would have known," that she has sustained an injury…notice must be given to the Mayor within the prescribed six-month period).  Here, on September 10, 2021, Mpoy submitted a claim to the Office of Risk Management reporting his intent to file a lawsuit against the District "for violations of [his] Fifth Amendment due process rights" based on

the District's alleged conversion of his property without due process.  *See* Lana Craven Decl.,

Ex. 1; Mpoy Letter, Ex. A.  Other than the tort of conversion, Mpoy made no reference to his

suspension nor did he indicate he suffered any mental, physical injuries or economic damages

arising from the District's actions as related to his suspension.  *Id.*  Indeed, while the letter is

timely, he only provided notice about an intent to commence an action against the District for

constitutional liability.  *Cf.* Ex. A, Compl. ¶¶ 39-47.  In fact, there are no facts within the letter

which address any claim under a theory of negligence—whether under a theory of intentional

causation of mental anguish and physical pain and suffering or under a theory of intentional or

willful negligence as alleged.  *See* Ex. A.  Thus, Mpoy's common law claims fail because he did

not fully satisfy the mandatory notice requirements under § 12-309.  And judgment should be

entered in the District's favor with respect to Claims 5 and 6.

**VII.**    **Mpoy's Intentional Causation of Mental Anguish and Intentional and Willful**
          **Negligence Fail as a Matter of Law.**

"Intentional Causation of Mental Anguish and Physical Pain and Suffering," is not a

claim recognized by this Court.  But if Mpoy's intent is to allege an Intentional Infliction of

Emotional Distress (IIED) claim, then he has failed to allege facts sufficient to set forth a

plausible IIED claim.  Under the law, in order to state a claim for IIED, a plaintiff must allege

that the defendant engaged in "extreme and outrageous" conduct that was intentional or reckless

and caused severe emotional distress to another.  *See Kerrigan v. Britches of Georgetowne*, 705

A.2d 624, 628 (D.C. 1997).  This "very demanding standard" is "only infrequently met."  *Dale v.*

*Thomason*, 962 F. Supp. 181, 184 (D.D.C. 1997).  Conduct is considered "extreme and

outrageous" when it is "so outrageous in character, and so extreme in degree, as to go beyond all

possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community."  *Bernstein v. Fernandez*, 649 A.2d 1064, 1075 (D.C. 1991) (citing Restatement

(Second) of Torts § 46 cmt. d (1965)).  "'[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities'" are not sufficient.  *Waldon v. Covington*, 415 A.2d 1070, 1076 (D.C. 1980) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).  Courts are "particularly demanding" when intentional infliction of emotional distress claims are made "in an employment context."  *Paul v. Howard Univ.*, 754 A.2d 297, 307 (D.C. 2000).  Employer-employee conflicts generally do not, as a matter of law, rise to the level of outrageous conduct.  *See Howard Univ. v. Best*, 484 A.2d 958, 986 (D.C. 1984).  Moreover, the mere discharge of an employee is not considered extreme and outrageous conduct sufficient to state an intentional infliction of emotional distress claim.  *See Tiefenbacher v. AARP*, Civil Action No. 05-1802, 2006 U.S. Dist. LEXIS 23629, at *12 (D.D.C. Apr. 27, 2006); *Elliott v. Healthcare Corp.*, 629 A.2d 6, 9 (D.C. 1993).

Here, Mpoy does not identify facts showing that either Burst or Powe's conduct was outrageous.  *See* Compl. ¶¶ 18-21.  Rather, he merely alleges work-place grievances.  *Id.  See also Best*, 484 A.2d at 986 (citing *Beidler v. W.R. Grace, Inc.*, 461 F.Supp. 1013, 1016 (E.D.Pa.1978) (finding plaintiff failed to state claim for IIED where there was evidence the plaintiff was excluded from staff meetings, was never informed about his job performance and was told a new assistant would replace him)).  Further, just like the *Beidler* plaintiff who alleged no more than workplace grievances, Mpoy's assertion that the defendants' conduct rises to the level of "outrageousness" because he was suspended does not reach the level of what the courts consider to be outrageous conduct in the employment context.  Therefore, Mpoy fails to properly plead facts to support his claim that these defendants are liable under Claims 5 or 6 and dismissal is appropriate.

15

Similarly, there is no recognized independent tort action for Intentional and Willful Negligence. But to the extent Mpoy seeks to allege the defendants were negligent in some fashion, Mpoy must allege "facts sufficient to show (1) a duty, owed by the defendant to the plaintiff, to conform to a certain standard of care; (2) a breach of this duty by the defendant; and (3) an injury to the plaintiff proximately caused by the defendant's breach." *Armstrong v. Navient Sols., LLC*, 292 F. Supp. 3d 464, 473 (D.D.C. 2018)(internal citations omitted).

Here, Mpoy's claim fails to meet any of these prongs. The Complaint does not set forth any facts showing what duty these defendants owed Mpoy, how they breached that duty, or that Mpoy was injured as a result of such breach. *See* Compl. ¶¶ 44-45. Because Mpoy fails to allege a viable claim for Intentional and Willful Negligence or simple negligence, this claim should be dismissed.

## CONCLUSION

For these reasons, Mpoy's complaint against these defendants should be dismissed with prejudice.

Date: November 4, 2022                    Respectfully submitted,

                                          KARL A. RACINE
                                          Attorney General for the District of Columbia

                                          CHAD COPELAND
                                          Deputy Attorney General
                                          Civil Litigation Division


                                          /s/ *Patricia A. Oxendine*
                                          PATRICIA A. OXENDINE
                                          D.C. Bar No. 428132
                                          Chief, Civil Litigation Division, Section I


                                          /s/ *Nicole Marimon*
                                          NICOLE MARIMON
                                          D.C. Bar No. 90001966

Assistant Attorney General
Office of the Attorney General
Civil Litigation Division, Section I
400 6th Street, NW
Washington, D.C. 20001
Phone: (202) 724-7316; (202) 705-1213 (direct)
Email: nicole.marimon@dc.gov

*Counsel for Defendants District of Columbia and
John Burst and Donielle Powe*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of Defendants' Motion to Dismiss Plaintiff's Complaint and

the District's Partial Motion for Summary Judgment, memorandum of points and authorities, and

proposed order were filed through the CM/ECF system on November 4, 2022, and served by

mail on November 7, 2022 to:

Mr. Bruno K. Mpoy
10703 Lombardy Road
Silver Spring, M.D. 20901

/s/ *Nicole Marimon*
NICOLE MARIMON
Assistant Attorney General

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BRUNO K. MPOY, | |
| *Plaintiff,* | |
| v. | 22-cv-02501 (BAH) |
| DISTRICT OF COLUMBIA, *et al.*, | |
| *Defendants.* | |

**ORDER**

Upon consideration of Defendants District of Columbia (the District), John Burst and Donielle Powe's Motion to Dismiss Plaintiff Bruno K. Mpoy's Complaint, and the District's Partial Motion for Summary Judgment, Mpoy's Opposition, the defendants' Reply, and the record, it is this _____ day of _____, 2022,

**ORDERED:** that the motion is granted for the reasons identified by the defendants in their motion; and it is,

**FURTHER ORDERED:** that judgment is granted in favor of the District, Burst and Powe; and it is,

**FURTHER ORDERED:** that this matter is dismissed with prejudice and the case is closed; and it is,

**SO ORDERED.**

_____
Judge Beryl A. Howell
U.S. District Court for the District of Columbia

18

Copy to:

Mr. Bruno K. Mpoy
10703 Lombardy Road
Silver Spring, M.D. 20901